UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KEJUAN FORD,<br><br>　　Plaintiff,<br><br>　　v.<br><br>LAYTON, et al.,<br><br>　　Defendants. | CAUSE NO. 3:24-CV-935-JTM-AZ |

OPINION and ORDER

Kejuan Ford, a prisoner without a lawyer, filed a complaint after his personal property was lost while he was housed at the Miami Correctional Facility in 2023. (DE # 1.) "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Ford alleges that, on August 23, 2023, his cellmate was accused of assaulting an officer in the prison's dayroom. (DE # 1 at 2.) Following the assault, Sgt. Layton and other officers handcuffed several inmates, including Ford and his cellmate, and moved them to the shower area of A-Cellhouse. (*Id.*) Ford asserts that on the way to A-Cellhouse, he told Sgt. Layton where his personal property was located in his cell. (*Id.*)

When he later returned to his cell, he was placed on strip-cell status for seventy-two hours and all of his property, including his original court documents and case notes as well as family items, had been removed from his cell. (*Id*. at 2-3.) Ford did not know where his property was located because he had not been given an inventory or confiscation slip. (*Id*.) When he was released from strip-cell status, he was given an empty property box and television. (*Id*.) Ford complained about the missing property, but he could not file a report because the prison was on lockdown. (*Id*.) He asserts Sgt. Layton stated he was "not getting anything," and she told him that was because an officer had been assaulted. (*Id*.) Ford asked Officer Synclaire about his property because she worked with Sgt. Layton on August 23, and she told him Sgt. Layton took his property. (*Id*. at 2-3.) While Ford asserts Sgt. Layton was responsible for taking his property, he also avers his former cellmate told Officer Ghraham that he had Ford's property, but Officer Ghraham did not investigate the matter or do anything to return the property to him. (*Id*. at 3.)

Ford initially asserts his constitutional rights were violated when his property was taken from his cell. The Fourteenth Amendment prohibits a state from depriving a person of property without due process of the law. But a state tort claims act that provides a method by which a person can seek reimbursement for the negligent loss or intentional deprivation of property meets the requirements of the Due Process Clause by providing a process to address the loss. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("For intentional [and] negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable

2

postdeprivation remedy."). Indiana's tort claims act (Indiana Code § 34-13-3-1 *et seq.*) and other laws provide for state judicial review of property losses caused by government employees, and they provide an adequate post-deprivation remedy to redress state officials' accidental or intentional deprivation of a person's property. *See Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) ("Wynn has an adequate post-deprivation remedy in the Indiana Tort Claims Act, and no more process was due."). The Indiana Tort Claims Act offered Ford a process for resolving his dispute that satisfied the Due Process Clause. Because the loss of property at the hands of state officials does not state a constitutional claim, he may not proceed here.

Next, Ford alleges that the taking of his property deprived him of access to the courts. Here, he avers that his property included original court documents and case notes he had prepared. Ford states that the loss of these documents and notes put him behind in his case work, causing his case to be delayed.

Prisoners are entitled to meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 824 (1977). The right of access to the courts is the right of an individual, whether free or incarcerated, to obtain access to the courts to adjudicate claims that have a reasonable basis in law or fact without undue interference. *Snyder v. Nolen*, 380 F.3d 279, 291 (7th Cir. 2004). To establish a violation of the right to access the courts, an inmate must show that unjustified acts or conditions hindered the inmate's efforts to pursue a non-frivolous legal claim, and that actual harm resulted. *See Lewis v. Casey*, 518 U.S. 343, 351 (1996); *Nance v. Vieregge*, 147 F.3d 591, 590 (7th Cir. 1998). In other words, "the mere denial of access to a prison law library or to other legal materials is not itself a violation

3

of a prisoner's rights; his right is to access *the courts*, and only if the defendants' conduct prejudices a potentially meritorious [claim] has this right been infringed." *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006) (emphasis in original). Thus, to state a claim, Ford must "spell out, in minimal detail" the connection between the denial of access to legal materials and the resulting prejudice to a potentially meritorious legal claim. *Id.* Ford has not alleged that any potentially meritorious legal claim was prejudiced as a result of his property being taken. Therefore, he may not proceed on this claim.

Furthermore, Ford asserts Sgt. Layton violated his constitutional rights when she removed his personal property from his cell in retaliation for his cellmate assaulting an officer. He states he had nothing to do with the assault and was punished for his cellmate's actions. Ford also contends that Sgt. Layton repeatedly expressed her dislike of him and Officer Synclaire will testify to this fact. *Id*

To the extent Ford is asserting a First Amendment retaliation claim, he must allege: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the [defendant's] decision to take the retaliatory action." *Id*. (citation omitted). The third factor requires some "causal link between the activity and the unlawful retaliation." *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). Because Ford does not allege he engaged in protected activity, he may not proceed here.

This complaint does not state a claim for which relief can be granted. If Ford believes he can state a claim based on (and consistent with) the events described in this

4

complaint, he may file an amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. He needs to write the word "Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form.

For these reasons, the court:

(1) GRANTS Kejuan Ford until **November 13, 2025**, to file an amended complaint; and

(2) CAUTIONS Kejuan Ford if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

**SO ORDERED.**

Date: October 14, 2025

s/James T. Moody  
JUDGE JAMES T. MOODY  
UNITED STATES DISTRICT COURT