**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | |
|---|---|
| **KEJUAN FORD,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**LAYTON, et al.,**<br><br>**Defendants.** | **CAUSE NO. 3:24-CV-935-JTM-AZ** |

**OPINION AND ORDER**

Kejuan Ford, a prisoner without a lawyer, filed an amended complaint against five defendants. (DE # 9.) "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

In his amended complaint, Ford alleges many of the same facts as he did in his original complaint. He initially asserts that, on August 23, 2023, his cellmate was accused of assaulting an officer. (DE # 9 at 2.) Following the assault, Ford alleges that Sgt. Layton removed his personal property from his cell. *Id.* at 2-3. His personal property included court documents, family items, and religious items. *Id.* Ford asked for an inventory slip and his property to be returned, but Layton mocked him by telling

him he would not get any of his personal belongings back. *Id.* Instead, he was placed on strip-cell status for seventy-two hours. *Id.* at 2. When strip-cell status ended, he was given an empty box and television. *Id.* Ford asserts that he could not file a report about the missing property because the prison was on lockdown. *Id.* Ford later asked Officer Synclaire about his property because she worked with Layton on August 23, and she told him that Layton took his property. *Id.* at 2-3. While Ford asserts Layton was responsible for taking his property, he avers his former cellmate told Officer Graham that he had his property, but Graham did not investigate the matter or do anything to return the property to him. *Id.* at 3.

Ford initially alleges that Layton and Graham violated his First Amendment rights. (DE # 9 at 2.) He asserts Layton took his personal property from his cell and Graham allowed his property to be taken or deliberately lost in retaliation for his cellmate allegedly assaulting an officer. *Id.* To state a First Amendment retaliation claim against Layton or Graham, Ford must allege: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (citation and internal quotation marks omitted). In the court's earlier screening order (DE # 8 at 4), the court explained that Ford could not proceed on this claim because he did not allege that he engaged in any protected First Amendment activity. In his amended complaint, Ford still does not identify any

First Amendment activity that predated his property being taken on August 23, 2023. Therefore, he may not proceed against either Layton or Graham.

Ford next asserts that Layton deprived him of the use of his religious materials when she removed his property from his cell on August 23, after his cellmate assaulted an officer. (DE # 9 at 4.) He alleges she prevented him from having daily devotions by reading his Bible and sought to break his spirit when she took his religious materials. *Id.*

"The Free Exercise Clause [of the First Amendment] prohibits the state from imposing a substantial burden on a central religious belief or practice." *Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013) (internal citation and quotation marks omitted). "A substantial burden puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thompson v. Holm*, 809 F.3d 376, 379-80 (7th Cir. 2016) (brackets, internal quotation marks, and citation omitted). Nevertheless, correctional officials may restrict the exercise of religion if the restrictions are reasonably related to legitimate penological objectives, which include safety, security, and economic concerns. *Turner v. Safley*, 482 U.S. 78, 89-91 (1987). Additionally, the Supreme Court has long established "the general proposition that a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993). Here, Ford complains about an action that was justified by legitimate safety and security concerns and that did not specifically target Ford's religious materials. Thus, he does not allege that Layton directed that materials

of a religious nature be confiscated from his cell in order to deprive him of his religious belongings. Ford may not proceed here.

Ford also asserts that Layton purposefully lost his personal property to impede his ability to file lawsuits, tort claims, and grievances. (DE # 9 at 2-3.) Ford further asserts Layton and the Warden of Miami Correctional Facility restricted his access to the law library in 2023 and early 2024, to prevent him from working on this lawsuit. *Id.* at 3.

As explained in the court's earlier screening order (DE # 8 at 3-4), prisoners are entitled to meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 824 (1977). The right of access to the courts is the right of an individual, whether free or incarcerated, to obtain access to the courts to adjudicate claims that have a reasonable basis in law or fact without undue interference. *Snyder v. Nolen*, 380 F.3d 279, 291 (7th Cir. 2004). To establish a violation of the right to access the courts, an inmate must show that unjustified acts or conditions hindered the inmate's efforts to pursue a non-frivolous legal claim, and that actual harm resulted. *See Lewis v. Casey*, 518 U.S. 343, 351 (1996); *Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir. 1998). In other words, "the mere denial of access to a prison law library or to other legal materials is not itself a violation of a prisoner's rights; his right is to access *the courts*, and only if the defendants' conduct prejudices a potentially meritorious [claim] has this right been infringed." *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006) (emphasis in original). Thus, to state a claim, Ford must "spell out, in minimal detail" the connection between the denial of access to legal materials and the resulting prejudice to a potentially meritorious legal claim. *Id.* Here, Ford's amended complaint, just like his earlier complaint, does not plausibly

allege that any potentially meritorious legal claim was prejudiced as a result of Layton losing his property or Layton and the Warden limiting his access to the law library in 2023 and early 2024. Therefore, he may not proceed against them.

Next, Ford asserts that his Fourteenth Amendment rights were violated when Layton removed his property from his cell. (DE # 9 at 2, 3.) As explained in the court's earlier screening order (DE # 8 at 2-3), the Fourteenth Amendment prohibits a state from depriving a person of property without due process of the law. But a state tort claims act that provides a method by which a person can seek reimbursement for the negligent loss or intentional deprivation of property meets the requirements of the Due Process Clause by providing a process to address the loss. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("For intentional [and] negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy."). Indiana's tort claims act (Indiana Code § 34-13-3-1 *et seq*.) and other laws provide for state judicial review of property losses caused by government employees, and they provide an adequate post-deprivation remedy to redress state officials' accidental or intentional deprivation of a person's property. *See Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) ("Wynn has an adequate post deprivation remedy in the Indiana Tort Claims Act, and no more process was due."). The Indiana Tort Claims Act offered Ford a process for resolving his dispute that satisfied the Due Process Clause. Because the loss of property at the hands of state officials does not state a constitutional claim, he may not proceed here.

Ford has also sued the Warden for violating Indiana Department of Correction ("IDOC") policy because he did not have a shower for five days while he was on lockdown in July 2024. (DE # 9 at 3.) A violation of IDOC policy alone is not a viable constitutional claim. *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (observing that "42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or . . . departmental regulations"); *Conner v. Hoem*, 768 Fed. Appx. 560, 564 (7th Cir. 2019) ("In any case, the Constitution does not require state actors to enforce their own policies and regulations.") (*citing Garcia v. Kankakee Cty. Hous. Auth.*, 279 F.3d 532, 535 (7th Cir. 2002)). Furthermore, Ford does not have a constitutional right to have a daily shower. "The importance of the daily shower to the average American is cultural rather than hygienic." *Davenport v. DeRobertis*, 844 F.2d 1310, 1316 (7th Cir. 1988). Allowing just one shower a week does not amount to a constitutional violation. *See Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012). Ford has not stated a claim against the Warden.

Ford next sues Graham alleging his former cellmate told Graham that he had Ford's property, but Graham did not investigate the matter or do anything to effectuate return of his property. (DE # 9 at 4.) Here, Ford asserts that Graham was deliberately indifferent for not investigating his cellmate's claim that he had Ford's property. *Id.* However, Ford has no right to ask for an investigation about his missing property. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[I]n American jurisprudence . . . a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *United States v. Palumbo Bros., Inc.*, 145 F.3d 850, 865 (7th

Cir. 1998) ("[C]riminal prosecution is an executive function within the exclusive prerogative of the Attorney General."). Therefore, Ford may not proceed here.

Furthermore, Ford has sued Synclaire asserting that he is being "added to attest to this truth not for monetary matters." (DE # 9 at 4.) However, this is not a valid basis for suing Synclaire. Therefore, he has not stated a claim here.

As a final matter, Ford has sued Nurse Scott alleging that she was deliberately indifferent to his serious medical needs after he was stabbed more than fifteen times in K-house in July 2024. (DE # 9 at 3.) However, this claim is unrelated to his claims related to the August 23, 2023, assault. "[U]nrelated claims against different defendants belong in different suits." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Therefore, Ford cannot pursue this claim here.

Ford has already had two opportunities to amend his complaint. "The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). "District courts, however, have broad discretion to deny leave to amend a complaint where the amendment would be futile." *Russell v. Zimmer, Inc.*, 82 F.4th 564, 572 (7th Cir. 2023). For the reasons previously explained, such is the case here.

For these reasons, the court:

1. **DISMISSES** Kejuan Ford's claims against Nurse Scott **WITHOUT PREJUDICE** pursuant to Federal Rule of Civil Procedure 21; and

2. **DISMISSES** the remaining claims **WITH PREJUDICE** under 28 U.S.C. § 1915A.

**SO ORDERED.**

Date: November 19, 2026

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT